OPINION *Page 2 
{¶ 1} On April 26, 2007, the Muskingum County Grand Jury indicted appellant, Timothy Williams, on one count of rape in violation of R.C. 2907.02 and one count of sexual battery in violation of R.C. 2907.03. Said charges arose from an incident involving appellant and a college student, Sarah Gramlich, in a dorm room at Muskingum College.
 {¶ 2} On August 14, 2007, appellant filed a motion to suppress, claiming any statements he made to police were involuntary and given under coercion. A hearing was held on August 23, 2007. At the conclusion of the hearing, the trial court denied the motion.
 {¶ 3} A jury trial commenced on October 17, 2007 on the rape charge only as the state had nolled the sexual battery count. The jury found appellant guilty as charged. A sexual predator classification hearing was held on November 13, 2007. By entry filed November 16, 2007, the trial court sentenced appellant to ten years in prison and classified him as a sexual predator.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE COURT ERRED IN ALLOWING THE TESTIMONY OF PAM HIVNOR IN THAT THE STATE FAILED TO ESTABLISH THAT SHE WAS AN EXPERT WITNESS, WHICH WAS SUSTAINED BY THE COURT YET THE COURT STILL ALLOWED WITNESS HIVNOR TO TESTIFY FULLY WITH EXPERT WITNESS CONCLUSIONS." *Page 3 
 II {¶ 6} "THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS."
 III {¶ 7} "THE VERDICT WAS NOT SUSTAINED BY THE SUFFICIENCY OF THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 IV {¶ 8} "THE TRIAL COURT COMMITTED ERROR WHEN IT LABELED APPELLANT A SEXUAL PREDATOR WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 9} Appellant claims the trial court erred in permitting Nurse Pam Hivnor to testify as an expert. We disagree.
 {¶ 10} After a voir dire, the trial court determined Nurse Hivnor did not qualify as an expert. T. at 331. Appellant argues after this ruling, the trial court erroneously permitted Nurse Hivnor to give expert testimony "as to whether the intercourse was consensual or non consensual, whether there was hemorrhaging or bruising of the cervix, and whether or not the victim was impaired or intoxicated from the use of alcohol." Appellant's Brief at 11-12. We note no objections were made. An error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long (1978), 53 Ohio St.2d 91; Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error.Long. Notice of plain error "is to be *Page 4 
taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 11} Nurse Hivnor testified she conducted a physical exam of Ms. Gramlich, including external and internal examination. T. at 338-340. Nurse Hivnor testified she personally observed the cervix and interior walls of the vagina. T. at 340. Although Nurse Hivnor noted "no trauma" on her report, she testified at trial that she made a mistake and observed "petechial hemorrhage and bruising to the cervix area." T. at 340-341. We find such testimony to be direct evidence of what Nurse Hivnor saw and not an expert opinion.
 {¶ 12} Nurse Hivnor testified she made no notations as to Ms. Gramlich's level of intoxication. T. at 345. We find Nurse Hivnor did not give an opinion on Ms. Gramlich's intoxication on direct examination.
 {¶ 13} Defense counsel cross-examined Nurse Hivnor and asked if the bruising on the hymen was consistent with consensual sexual activity. T. at 348. She answered "[i]t could be." Id. Thereafter, defense counsel asked Nurse Hivnor if she felt Ms. Gramlich was impaired and she answered no. T. at 354.
 {¶ 14} We find no violation of the trial court's determination that Nurse Hivnor was not an expert. All questions bordering on the complained of issues were raised by defense counsel. Questions as to intoxication were permissible as being something a layman can easily render an opinion on. Questions regarding consensual sex and bruising were raised by defense counsel. Nurse Hivnor agreed the bruising could be consistent with consensual sexual activity. It is well accepted law a party is not *Page 5 
permitted to complain of an error which said party invited or induced the trial court to make. State v. Kollar (1915), 93 Ohio St. 89.
 {¶ 15} Upon review, we find no error regarding Nurse Hivnor's testimony in the complained of areas.
 {¶ 16} Assignment of Error I is denied.
 II {¶ 17} Appellant claims the trial court erred in denying his motion to suppress his statements to police as they were involuntary and given under coercion. We disagree.
 {¶ 18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; *Page 6 Guysinger. As the United States Supreme Court held in Ornelas v.U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 19} Appellant argues the evidence supports his contention that his statements were not voluntary. Appellant argues he was fatigued, had ingested a substantial amount of alcohol, and was unable to complete any sexual act due to "erectile dysfunction." Appellant's Brief at 13. Appellant argues the interview with police lasted six hours and he was not given any food and had no sleep.
 {¶ 20} Officers Bethany Hayes and Paul Waryck of the Muskingum College Police testified appellant was cooperative and perfectly coherent when Officer Hayes confronted appellant and escorted him to the cruiser to take him to the station for his interview. August 23, 2007 T. at 9, 33-35. Appellant was given his Miranda warning and waiver. Id. at 10. Officer Hayes gave appellant water at his request, and appellant was permitted to go to the restroom unaccompanied. Id. at 12. Appellant was willing to talk to the officers after being read his Miranda warning. Id. at 14. No one yelled at appellant, threatened him, or promised him anything. Id. at 15, 37. Appellant gave a written statement approximately an hour and a half after being given his Miranda warning. Id. at 16; State's Exhibit 2. The officers testified although appellant admitted to drinking beers and "a couple shots," he did not appear to be intoxicated, and he never requested time to sleep. Id. at 17-18, 34-36.
 {¶ 21} K. C. Jones of the Muskingum County Sheriff's Department testified he met appellant at the college security office during the 6:00 a.m. hour. Id. at 61. Appellant was re-advised of hisMiranda rights by two deputies, Deputy Jones and *Page 7 
Deputy Roger Kelly. Id. at 62, 79; State's Exhibit 3. Appellant never requested food, water, or bathroom privileges from the deputies. Id. at 64, 78. The deputies never threatened appellant or promised him anything. Id. at 65. The interview lasted no more than an hour. Id. at 66. Appellant cooperated with the deputies, and they did not smell alcohol on his breath. Id. at 71-72, 79-80.
 {¶ 22} On the record, the trial court issued its decision as follows:
 {¶ 23} "THE COURT: Based upon the evidence which has been presented here today, the Court will deny the Defendant's motion to suppress the statements. The Court finds the Miranda warnings were given and understood by the Defendant. There was no conclusive evidence that the Defendant was impaired. In fact, the evidence was that he was not impaired. Therefore, the Court will deny the motion." Id. at 88.
 {¶ 24} Upon review, we find nothing in the record to refute the trial court's conclusion.
 {¶ 25} Assignment of Error II is denied.
 III {¶ 26} Appellant claims his conviction was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 27} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On *Page 8 
review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Martin at 175.
 {¶ 28} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(c) which states the following:
 {¶ 29} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 30} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 31} Appellant's conviction is based upon Ms. Gramlich's impairment. Appellant argues the evidence is insufficient and does not support a finding that she was impaired beyond a reasonable doubt. Appellant argues they were partying, equally impaired, and acted consensually. We note the weight to be given to the evidence and *Page 9 
the credibility of the witnesses are issues for the trier of fact.State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881.
 {¶ 32} Ms. Gramlich testified she was buzzed after partying at a frat house. T. at 138. She had consumed four or five shots of vodka, "if not a couple more." T. at 136. She went back to her room, felt sick, and passed out after making out with Billy Brunnett. T. at 139. Thereafter, Ms. Gramlich was awakened some two hours later with someone on top of her and inside her. T. at 140. She pushed him off and yelled at him. T. at 140, 142. She had no pants on and was wet. T. at 143. She dressed in sweatpants and ran outside for help from the resident advisor. Id.
 {¶ 33} Mr. Brunnett testified Ms. Gramlich was drunk at the party. T. at 174. When he accompanied Ms. Gramlich back to her room, they messed around, she got sick, and then she passed out. T. at 177-180. They did not have sex because she was "pretty drunk." T. at 178. Mr. Brunnett left but could not lock the door because he did not have the key. T. at 180.
 {¶ 34} After Ms. Gramlich went outside to report the incident, she was described as crying, upset, sobbing, bawling persistently, and really breaking down. T. at 181, 210-211, 248. A witness described appellant as not "perfectly coherent." T. at 244.
 {¶ 35} Deputy Jones described appellant as being hung-over during the 6:00 a.m. hour, and Dr. Michael Dayton described her as tearful and disheveled when she arrived at the emergency department. T. at 277, 306.
 {¶ 36} Upon review, we find from the record sufficient evidence to prove beyond a reasonable doubt that Ms. Gramlich was impaired by alcohol. Appellant admitted to campus police that he knew Ms. Gramlich was drunk in her room. T. at 291. *Page 10 
 {¶ 37} Assignment of Error III is denied.
 IV {¶ 38} Appellant claims the trial court erred in classifying him as a sexual predator. We disagree.
 {¶ 39} In State v. Cook (1998), 83 Ohio St.3d 404, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained in C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279. We find this to be the applicable standard as the Cook court addressed a similar challenge under a manifest weight standard of review. See, Cook at 426.
 {¶ 40} R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(2) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 41} "(2) In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 42} "(a) The offender's age;
 {¶ 43} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses, including, but not limited to, all sexual offense;
 {¶ 44} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed; *Page 11 
 {¶ 45} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 46} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 47} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 48} "(g) Any mental illness or mental disability of the offender;
 {¶ 49} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 50} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 51} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 52} Appellant has a juvenile and criminal history including battery and burglary and experimenting with explosives at the age of fourteen. November 13, 2007 T. at 7. His pattern of criminal behavior while in Ohio has been of an aggressive nature and has been escalating in degree. Id. at 8. Appellant has not taken advantage of court sanctions he has been given in the past, and has completely violated them. Id. at 10-11. *Page 12 
He "has traveled from state to state, committing crimes in more than one state." Id. Appellant has shown no remorse, and in fact, he believed Ms. Gramlich "was the cause and invited him into the room." Id.
 {¶ 53} During the classification hearing, the trial court noted the following:
 {¶ 54} "The Defendant had no business even being at the school. He used a false name. And, therefore, it is evident, given his criminal history, the nature of his prior criminal history, that he was there for any purpose but a good one." Id. at 18.
 {¶ 55} To this court, it appears appellant's unauthorized presence and assimilation into the freshman college culture during the first week of school is indicative of his attempt to take advantage of youthful, inexperienced students for the fun of it. We find the trial court's classification is well within the mandates of the statute.
 {¶ 56} Assignment of Error IV is denied.
 {¶ 57} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.
 Farmer, J., Hoffman, P.J., and Gwin, J. concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed. *Page 1